**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

PAMELA HALL ,                                          :

                         Case No. 3:09-cv-391

        Plaintiff,

                         District Judge Walter Herbert Rice
                         Magistrate Judge Michael R. Merz

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.        :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on October 12, 2001, alleging disability from November 1, 1990, due to multiple impairments. *See* Tr. 76-77, 87. Plaintiff's application was denied initially and upon reconsideration. (Tr. 47-58). Administrative Law Judge George J. Spidel held a hearing, (Tr. 384), following which he determined that Plaintiff was not disabled. (Tr. 384-95). The Appeals Council denied Plaintiff's request for review, (Tr. 401-03 ), and Plaintiff took no further appeal.

Plaintiff filed a second application for SSI on November 12, 2003, alleging disability

from November 1, 1990, due to systemic lupus, fibromyalgia, sleep apnea, restless leg syndrome, anxiety, depression, angina, hiatal hernia, and neurogenic bladder. (Tr. 429-31; 438). Plaintiff's application was denied initially and on reconsideration. (Tr. 404-13). Administrative Law Judge Thomas McNichols held a hearing, (Tr. 875-903), following which he determined that Plaintiff is not disabled. (Tr. 21-33). The Appeals Council denied Plaintiff's request for review, (Tr. 10-12), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff has severe chronic pain attributed to lupus, a history of fibromyalgia, chronic back pain, depression/anxiety, and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 25, ¶ 2; Tr. 27, ¶ 3). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. (Tr. 28, ¶ 4). Judge McNichols then used sections 201.21 through 201.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, ¶ 9). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 33, ¶ 10).

Plaintiff underwent a muscle biopsy in 1997, which revealed evidence of myopathy associated with systemic lupus erythematosus (SLE). (Tr. 369-72). In addition, Plaintiff was seen in the hospital numerous times for complaints of abdominal pain, (Tr. 137-38, 146-56), right side pain, (Tr. 139-43), neck pain, (Tr. 144-45), closed head injuries, (Tr. 157-58; 159-60), myofascial strain, (Tr. 161-62, 167-68), acute exacerbation of fibromyalgia, (Tr. 163-64, 189-93), chronic back pain, (Tr. 165-66), double vision, (Tr. 169-72), and chest pain. (Tr. 173-88).

The record contains Plaintiff's treatment notes from Dayton Family Medicine dated March, 1999, through May, 2007. (Tr. 241-322, 663-81, 723-52, 863-72). Dr. Apple began treating Plaintiff on July 24, 2001, after her previous family physician, Dr. Davis, retired. (Tr. 243). On December 10, 2001, Dr. Apple reported that he was unable to fully assess whether Plaintiff was disabled. (Tr. 242-50). Dr. Apple reported that Plaintiff had a history of disc herniation with degenerative changes, a slow, unsteady gait, and multiple tender spots on her back, but no other abnormalities on physical examination. *Id.* Dr. Apple reported that although Plaintiff reported pain with motion, she was able to perform both fine and gross movements. *Id.* Dr. Apple opined that, based on Dr. Davis' notes and Plaintiff's history, Plaintiff was severely impaired in all activities except speaking, hearing, and light handling of objects. *Id.*

Examining physician, Dr. Danopulos reported in January, 2002, that Plaintiff's examination revealed full ranges of motion, no evidence of joint abnormalities, and that she had a normal neurological examination. (Tr. 200-11). Dr. Danopulos also reported that Plaintiff had a normal gait, her spine was painful to pressure at the mid lower dorsal and lumbosacral spine, her paravertebral muscles were soft and painless to pressure and palpation, straight leg raising was positive at seventy degrees, and that her lumbosacral spine motions were restricted and painful. *Id.* Dr. Danopulos noted that Plaintiff was able to heel and toe walk and that lumber x-rays demonstrated advanced degenerative disc changes at L4-5 and L5-S1. *Id.* Dr. Danopulos identified Plaintiff's diagnoses as lumbar spine arthritis, lupus with myalgias and arthralgias which have been treated properly, exogenous obesity, and depression. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activity was affected and restricted by her impairments. *Id.*

A January 25, 2002, MRI of Plaintiff's lumbosacral spine revealed a history of right

hemilaminectomy defect at L4-5 and a microlaminectomy defect on the left side at L5-S1, a mild bulge at L4-5, disc dehydration at L3-4 through L5-S1, and marked narrowing of the disc space at L4-5 and L5-S1 with mild degenerative endplate changes. (Tr. 256-57).

Plaintiff was seen at the ER numerous times from 2002 through 2004 for various complaints including back pain, (Tr. 325-27), neuropathy of the right leg, (Tr. 328-30), injuries which resulted from a fall, (Tr. 331-34), chest pain, (Tr. 575-82), "pain all over", (Tr. 335-43), trembling, fibromyalgia, and chest pain, (Tr. 554-60), panic attack, (Tr. 561-70), chest pain, (Tr. 571-74), swollen legs, (Tr. 611-18), acute exacerbation of lupus, (Tr. 642-51), right flank pain, (Tr. 753-59), chest pain, (Tr. 767-77), muscle pain, (Tr. 760-66), right sided pain, (Tr. 658-62), and injuries to her right shoulder, right hip, and right knee sustained in a fall down the stairs. (Tr. 721-22).

The record contains a copy of Plaintiff's treatment notes from the Hopeland Health Center/Grandview Hospital neurological clinic dated June 17, 2002, through February 13, 2003. (Tr. 346-66). Those notes reveal that Plaintiff received treatment for sleep apnea, restless leg syndrome, and general anxiety disorder. *Id.*

Plaintiff received treatment from Dr. Rogers at the Pain Management Center, from April 18, 2003, through September 12, 2003. (Tr. 541-53). When he initially saw Plaintiff, Dr. Rogers noted that Plaintiff had diminished bilateral reflexes and Achilles tendons and multiple trigger points throughout her upper thoracic and cervical spine and Dr. Rogers opined that Plaintiff's pain was a result of myositis or fibromyalgia. *Id.* Plaintiff underwent a series of trigger point injections and Dr. Rogers subsequently reported Plaintiff obtained good pain relief from the treatment. *Id.*

Plaintiff treated with Dr. Reddivari, a cardiologist, from August 24, 2001, through December 18, 2003, due to atypical chest pain. (Tr. 583-90). On December 18, 2003, Dr. Reddivari opined that Plaintiff's chest pain was noncardiac in nature. *Id.*

The record contains treatments notes from Digestive Specialists, Inc., dated February 10, 1996, through July 1, 2004. (Tr. 682-99). Those records reveal that Plaintiff received treatment at that facility for GI bleeding, that a colonoscopy performed in July, 2004, revealed grade 1 internal hemorrhoids and diverticulosis, and biopsies demonstrated mild acute and chronic gastritis. *Id.*

A CT scan of Plaintiff's abdomen and pelvis performed on June 19, 2004, revealed a fatty infiltration of her liver and status post cholecystectomy and hysterectomy. (Tr. 720).

In June, 2004, Dr. Apple reported that he treated Plaintiff for depression, fibromyalgia, chronic pain syndrome, GERD, lupus, neurogenic bladder, and chronic back pain, which Dr. Apple described as long-standing, chronic conditions. (Tr. 663-71). Dr. Apple also reported that Plaintiff had been seen by specialists in pain management, rheumatology, cardiology, neurology, and physical therapy, that she had been treated with Elavil, Premarin, Lorazapam, Lasix, SloMag, Oxycontin, Baclofen, Amantadine, Nexium, Lopressor, and Celebrex, and that Plaintiff was stable with therapy and could perform activities of daily living without difficulty. *Id.* Dr. Apple noted that Plaintiff was very labile and emotional, was limited in the range of motion of her lumbar spine at all planes, had a normal gait, had no history of heart disease, and that he did not treat her for a cardiac condition. *Id.*

Dr. Apple reported in March, 2005, that Plaintiff's impairments were SLE, fibromyalgia, non-cardiac chest pain, neurogenic bladder, chronic low back pain, hypothyroidism, right carpal tunnel syndrome, gastroesophageal reflux disease, anxiety, and depression. (Tr. 723-

24). Dr. Apple also reported that Plaintiff met most of the criteria of fibromyalgia. *Id.* Dr. Apple noted that Plaintiff had a psychiatric component to her tremors and shaking episodes. *Id.* Dr. Apple opined that Plaintiff was disabled by her multiple medical conditions, lack of job skills, and psychiatric history. *Id.*

In June, 2005, Plaintiff underwent cardiac testing which demonstrated normal results and a low probability for a pulmonary embolic. (Tr. 806-07). A June 26, 2005, lower extremity venous doppler study revealed no evidence of deep venous thrombosis. (Tr. 788-89). An MRI of Plaintiff's right upper arm which was performed in August, 2005, was normal. (Tr. 743). June 2, 2006, laboratory test results revealed positive ANA antibody titer which was indicative of an auto-immune disorder. (Tr. 741). In January, 2006, Plaintiff's cardiac testing was normal. (Tr. 803-05).

On October 25, 2006, Dr. Apple reported that Plaintiff was able to lift/carry less than two pounds occasionally and zero pounds frequently, walk/stand for less than two hours in an eight-hour workday for one-half an hour without interruption, and sit for less than two hours in an eight-hour day and for one-half hour without interruption. (Tr. 821-25). Dr. Apple also reported that Plaintiff should never climb, stoop, crouch, kneel, or crawl, and that she was limited in reaching, handling, and pushing/pulling but not limited in fingering. *Id.* Dr. Apple opined that Plaintiff was not able to perform medium, light, or sedentary work and that due to her multiple medical condition, she had chronic depression which impaired her ability to work on a regular basis. *Id.*

Dr. Danopulos examined Plaintiff again in January, 2007, and reported that Plaintiff was sensitive to palpation, her left leg joints were painful, her vertebral muscles were painful to pressure, her lumbar range of motion was restricted, and that Plaintiff had a normal gait and was able

to get on and off the examining table without difficulty. (Tr. 826-41). Dr. Danopulos also reported that Plaintiff's bilateral squatting and straight leg raising were normal and that her right grip strength was decreased. *Id.* Dr. Danopulos identified Plaintiff's diagnoses as a history of lupus, status post lumbar spine diskectomies with arthralgias, history of carpal tunnel syndrome, history of mild neurogenic bladder, sleep apnea, obesity and circumstantial depression. *Id.* Dr. Danopulos opined that Plaintiff was able to lift and carry up to twenty pounds occasionally and up to ten pounds frequently, sit for seven hours in an eight-hour day and for one hour without interruption, stand for two hours in an eight-hour day and for twenty minutes without interruption, and walk for one hour in an eight-hour day and for ten minutes without interruption. *Id.* Dr. Danopulos also opined that Plaintiff's aches and pain and sleep apnea were aggravated by her obesity and he concluded that Plaintiff's ability to perform work activities was limited by her joint pain. *Id.*

An MRI of Plaintiff's lumbar spine performed on November 13, 2006, demonstrated a herniation of the intervertebral disc at L3-4 compressing the L3 nerve in the lateral aspect of the left neural foramen. (Tr. 869).

Plaintiff sought emergency room treatment for chest pain on December 28, 2006, (Tr. 795-804), for an exacerbation of her fibromyalgia on December 31, 2006, (Tr. 842-48), and for arm pain on January 2, 2007. (Tr. 849-55).

Plaintiff attended physical therapy from December 4-22, 2006, but did not finish the prescribed course of treatment due to cancelling many appointments. (Tr. 856-62).

Plaintiff continued to see Dr. Apple throughout 2007 for complaints of pain, and he continued to prescribe a wide-range of medications. (Tr. 863-72).

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by rejecting

the opinion of her treating physician, Dr. Apple, and by improperly relying on the examining physician, Dr. Danopulos', opinion.  (Doc. 8).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009).  "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544.  "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case

---

FN 1.  Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the

11

opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge McNichols rejected Dr. Apple's opinion that Plaintiff is not capable of performing even sedentary work on the bases that Dr. Apple did not support his opinion with any objective medical evidence or clinical findings and because it was inconsistent with the overall evidence of record. (Tr. 30).

Although Dr. Apple essentially opined in March, 2005, and October, 2006, that Plaintiff had a residual functional capacity that was inconsistent with the ability to perform substantial gainful activity, he did not support his opinions with any clinical findings. In offering his March, 2005, opinion, the only medical information Dr. Apple referred to was Plaintiff's multiple conditions, lack of job skills, and psychiatric history.  Dr. Apple did not support his opinion with any clinical signs or diagnostic test results. Similarly, Dr. Apple reported in October, 2006, that Plaintiff was not able to perform sedentary work. However, in support of his opinion, Dr. Apple essentially recited Plaintiff's subjective complaints and provided no objective clinical findings to support his opinion.

Additionally, Dr. Apple's opinions are not supported by his office notes.  A review of Dr. Apple's office notes reveal that they contain few objective clinical findings. Dr. Apple's treatment records mostly reflect superficial examinations and prescribing medications. See Tr. 663-81, 725-41, 863-68, 870-72. Additionally, the Court notes that when Dr. Apple completed a questionnaire in June, 2004, he noted that Plaintiff was stable with therapy and that she could

12

perform activities of daily living without difficulty.

Finally, Dr. Apple's opinion is inconsistent with the other evidence of record. For example, examining physician Dr. Danopulos reported that Plaintiff had, at most mild positive findings such as restricted lumbar range of motion. Indeed, Dr. Danopulos reported that Plaintiff had a normal gait, a normal neurological examination, was able to heel and toe walk, was able to squat, and that she was able to get on and off the exam table without difficulty. Further, Dr. Apple's opinion is also inconsistent with the reviewing physicians' opinions. (Tr. 715-19).

Under these facts, the Commissioner did not err by rejecting Dr. Apple's opinion.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

October 20, 2010.

                                                        *s/ Michael R. Merz*
                                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).